**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**STEFAN DUMITRU** | **Criminal No. 17-0288 (ES)**<br><br>**OPINION** |

**MCNULTY, DISTRICT JUDGE**

Before the Court is defendant Stefan Dumitru's motion (DE 139) for a reduction of sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The Government opposes the motion. (DE 141). This matter has been reassigned from Judge Salas to me for purposes of this motion. Having considered the parties' submissions, I decide this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer,* 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the motion is DENIED.

**I.    BACKGROUND**[1]

On July 26, 2017, Mr. Dumitru pled guilty to conspiracy to commit bank fraud, contrary to 18 U.S.C. § 1344, in violation of 18 U.S.C. § 1349. (DE 117–119). On November 18, 2019, Mr. Dumitru was sentenced by the Honorable Esther Salas to a term of imprisonment of 12 months and 1 day, to be followed

---

[1]  Citations to documents in the record will be abbreviated as follows:
   Mot. = Mr. Dumitru's motion, DE 139
   Opp. Br. = Government's brief in opposition to the motion, DE 141
   Sentencing Tr. = Transcript of Mr. Dumitru's sentencing

by two years of supervised release. (DE 128). Mr. Dumitru was scheduled to self-surrender on January 15, 2020; however, he unfortunately was involved in a motor vehicle accident in early January and required medical treatment. As a result, Judge Salas delayed Mr. Dumitru's surrender date several times. (*See* DE 131, 133, 135, 136 & 138). Mr. Dumitru ultimately self-surrendered on September 8, 2020, and is serving his sentence at Moshannon Valley Correctional Institution ("MVCI") in Philipsburg, PA. (DE 138; Mot. at 2[2]).

Mr. Dumitru now moves this Court for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) based on the lack of treatment he has received for his injuries stemming from the motor vehicle accident and also on his positive COVID-19 diagnosis.[3] The Government opposes the Motion.

## II.   LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). As relevant here, § 3582(c)(1) provides as follows:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau

---

[2]   Citations to pages within Mr. Dumitru's motion refer to the page numbers generated by the Court's electronic case filing system.

[3]   Earlier this week, counsel for Defendant informed the Court that MVCI will be closing as a federal institution, and that transfers may begin as soon as next week. *See* The Courier Express, "GEO's Moshannon Valley Correctional Facility loses federal contract" (Jan. 21, 2021) http://www.thecourierexpress.com/news/geos-moshannon-valley-correctional-facility-loses-federal-contract/article_c7896d80-0dc6-5cb4-a1b0-9bce70879317.html. The case is nevertheless not moot, and I therefore decide it.

> of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a reduction;
>>
>> [. . .]
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*See also United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary and compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the section 3553(a) factors, to the extent applicable. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018).

## III.   ANALYSIS

### A.   Exhaustion

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet § 3582(c)(1)(A)'s exhaustion requirement, which requires either that that the defendant has exhausted all administrative remedies, or

that, since the submission of a request to the warden, 30 days have passed without a decision being rendered. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Government does not dispute that Mr. Dumitru satisfied this exhaustion requirement by submitting a request for compassionate release to the warden at his facility more than thirty days prior to his filing this motion. (*See* Mot. at 3; Opp. Br. at 10 n. 8). I turn to the merits.

**B.     Extraordinary and Compelling Reasons for Reduction**

Congress directed the Sentencing Commission to define the "extraordinary and compelling reasons" standard. *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement in which an application note lists three specific circumstances that qualify as extraordinary and compelling. Generally speaking, the enumerated circumstances include: (i) a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; (ii) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; or (iii) certain family circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). In addition, the Sentencing Commission

included a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).

This policy statement, however, has not been updated since the First Step Act was passed, and it was drafted to address motions made by the BOP, not by defendants. Because of this, courts have been faced with the vexed question of the significance of the Sentencing Commission's failure, as of yet, to amend the Guidelines to conform to the First Step Act.[4] I do not weigh in on this issue. I look to the Guidelines, application notes, and commentary for guidance. I will assume, however, that they do not limit what a court, within its discretion, may find "extraordinary and compelling."[5]

Here, Mr. Dumitru argues that he is not receiving adequate medical treatment at MVCI for either the injuries he sustained from his car accident or for his positive COVID-19 diagnosis. As set forth below, the medical records do

---

[4] The Commission has a number of long-standing vacancies, and lacks a quorum. *See Organization,* UNITED STATES SENTENCING COMMISSION, https://www.ussc.gov/about/who-we-are/organization (last visited Jan. 26, 2021).

[5] There appears to be a growing consensus that section 1B1.13 does not limit the discretion of a court considering compassionate release under the First Step Act. *See United States v. Brooker*, 976 F.3d 228 (2nd Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("When a defendant exercises his new right to move for compassionate release on his own behalf, in other words, § 1B1.13 does not apply."); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners.").

not really bear out a complaint that Mr. Dumitru is not receiving adequate medical care at MVCI. Even if that were true, however, the motion would fail because Mr. Dumitru has not adequately explained why his situation is extraordinary and compelling, or why his situation requires his *release* under the applicable legal standards.

Mr. Dumitru argues that he is not receiving adequate medical treatment for his injuries, and that without such treatment he is at risk of "serious permanent injury." (Mot. at 3). The motion, while not very precise, appears to focus on the lack of physical therapy for his shoulder injury. (*Id.* at 1). I gather from the exhibits attached to the motion that he also believes physical therapy is necessary for his ankle and back injuries. (*See* DE 139-1 at 1–3 (letters from three doctors, each opining that Mr. Dumitru would benefit from therapy for his shoulder, ankle, and back injuries)). According to medical records submitted by the Government, Mr. Dumitru's chief complaint appears to involve back pain. (*See e.g.*, Exhibit A at 28–30[6]; Exhibit C at 14–16[7]). I will assume that he complains of lack of physical therapy for the shoulder, ankle, and back injuries that resulted from his car accident.

---

[6] The Government submitted Mr. Dumitru's medical records (Exhibits A, B & C) to the Court *in camera* but did not file the same on the public docket. The Government also filed its opposition brief on the public docket with redactions applied to those portions discussing the medical records, and provided the Court with an unredacted version. Because the privacy implications of the medical records themselves are obvious, I will order these exhibits to be filed under seal. As for the Government's brief, the parties shall meet and confer to determine whether such redactions are necessary; as set forth in the accompanying Order, the parties shall advise the Court as to the outcome of their discussions.

[7] Because these exhibits lack consecutive page numbering, I cite to the PDF page numbers.

The medical records submitted by the Government suggest that MVCI has been responsive to Mr. Dumitru's complaints of pain. Mr. Dumitru's injuries and associated pain are noted on his medical intake forms. (Exhibit A at 44–47). After intake, on several occasions, Mr. Dumitru requested to see a doctor, complaining of back pain. (*See* Exhibit C at 14–16). At first, he was provided medication for the pain. (Exhibit A at 30). After continued complaints, medical staff ordered a lumbar spine x-ray, recommended applying heat, stretching, walking exercises, as well as a change in medication for 60 days. (Exhibit A at 28). A lumbar spine x-ray was conducted on November 2, 2020, and it revealed that Mr. Dumitru was experiencing muscle spasms and mild degenerative changes. (Exhibit A at 52). Shortly before this x-ray was performed, on October 25, 2020, medical staff reviewed Mr. Dumitru's medical records. They noted the injuries stemming from his motor vehicle accident; they concluded, however, that "no further diagnostic tests and procedures need[ed] to be performed," and that Mr. Dumitru could "be followed clinically here at MVCF." (Exhibit A at 25–26). The medical reports speak in generalities to the effect that physical therapy is indicated, and that without it the shoulder condition might deteriorate. These efforts demonstrate, however, that, although Mr. Dumitru may not be receiving physical therapy for his injuries, MVCI is being attentive to his complaints of pain and treating his injuries in other ways. A difference in medical opinion regarding modes of therapy does not rise to the level of extraordinary and compelling circumstances.

As for his COVID-19 diagnosis, Mr. Dumitru notes that, at the time of his

motion, he had contracted the virus "for which he is not receiving any treatment in prison."[8] (Mot. at 3). The medical records suggest otherwise.

Mr. Dumitru complained of having a headache and chills on December 20, 2020, and tested positive for COVID-19 on December 21, 2020. (Exhibit A at 18). After testing positive, Mr. Dumitru had daily check-ins with medical staff to monitor his symptoms. During each check-in from December 21, 2020, to December 30, 2020, Mr. Dumitru denied suffering from any of the following symptoms: chest pain, shortness of breath, cough, nausea, vomiting, constipation, diarrhea, fever, chills, loss of taste or smell, headache, body aches. (Exhibit A at 6–15). On January 1, 2021, Mr. Dumitru was marked "COVID-19 recovered." (*Id.* at 6). Thus it appears that MVCI adequately and appropriately monitored Mr. Dumitru's symptoms and reasonably concluded that no further medical treatment was necessary.

---

[8]  Mr. Dumitru does not make any other COVID-19-related arguments in his § 3582 motion. In a letter sent to the warden at MVCI, counsel for the defendant writes the following: "It is feared that as a result of not receiving medical treatment, [Mr. Dumitru] is more susceptible to contracting disease, including the Corona Virus." (DE 139-1 at 7 (ECF Pagination)). To the extent Mr. Dumitru intended to raise that argument in this motion, I reject it. Mr. Dumitru makes no attempt to connect his physical injuries to an increased susceptibility to contracting COVID-19. *See People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. (last visited Jan. 26, 2021); *see also United States v. Henries*, No. 00-0788, 2020 WL 4727090, at *2 (D.N.J. Aug. 14, 2020) (relying on the CDC's classifications to conclude that defendant's cited medical condition was insufficient to meet the extraordinary and compelling standard). I thus dispense with the remainder of the typical two prong analysis employed in COVID-19 compassionate release cases which looks at the alleged underlying medical condition(s) and the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated. *United States v. Moore*, No. 19-101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

The CDC, for what it is worth, states that, although studies are ongoing, examples of reinfection "have been reported, but remain rare." See Reinfection with COVID (last updated Oct. 27, 2020), CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html. So a past COVID-19 infection, resulting in relatively mild symptoms with no ongoing symptoms reported, is not a substantial basis for release from custody. *See United States v. Calloway*, No. 12-0358, 2020 WL 7480295, at *3 (E.D. Pa. Dec. 18, 2020) ("Courts have also stated that the possibility of reinfection is not an extraordinary and compelling reason for compassionate release, particularly where a defendant presented no symptoms in his first experience with the virus.").

Even assuming that the medical treatments he has received could be improved, Mr. Dumitru fails to demonstrate that his *release* is required under the applicable standards. The standard, as noted above, is not that the prisoner is suffering from some medical syndrome and would be better off at home, seeing his own doctor. Rather, the prisoner's situation must present an "extraordinary and compelling" case for release. Mr. Dumitru does not, for example, argue that his injuries are so severe that, without physical therapy, his ability to provide self-care within the environment of a correctional facility is substantially diminished and that he is not expected to recover. U.S.S.G. § 1B1.13, Application Note 1(A). Nor does he argue that he suffers from the type of severe underlying medical condition which would put him at a high risk of serious illness from COVID-19. The medical records do not appear to support a

9

conclusion that either Mr. Dumitru's physical injuries or his COVID-19 diagnosis are the type of "severe" medical condition that would warrant a potential sentence reduction. *See e.g., United States v. Rodriguez*, 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019) ("Rodriguez's situation, while troubling, does not show the severity of deterioration in his 'medical condition' that courts have required for compassionate release." (collecting cases)).

At best, Mr. Dumitru's allegations may suggest an administrative or civil claim for inadequate medical care, not a claim for compassionate release. *See United States v. Hoskin*, No. 17-0500, 2020 WL 7624844, at *3 (E.D. Mo. Dec. 22, 2020) ("[A] motion for compassionate release is not the proper vehicle for asserting claims of inadequate medical care from the BOP and Defendant's wholly unsupported claims need not be considered here."); *United States v. Fowler*, No. 99-0083, 2020 WL 7408239, at *5 (N.D. Tex. Nov. 17, 2020) (explaining that the defendant "may not litigate any claims alleging inadequate medical care during his federal incarceration in this closed criminal action." (*report and recommendation adopted*, 2020 WL 7405654 (N.D. Tex. Dec. 17, 2020)).

Accordingly, Mr. Dumitru has not set forth the requisite extraordinary and compelling reasons to justify a sentence reduction—either based on his physical injuries or his COVID-19 diagnosis—and his motion must be denied for this reason alone. *See United States v. Munoz*, No. 15-00324, 2020 WL 7074351, at *3 (D.N.J. Dec. 3, 2020) (denying motion for compassionate release based on the defendant's failure to demonstrate an extraordinary and

compelling reason for a sentence reduction).

### C. Section 3553(a) Factors and Dangerousness

Before granting a motion for compassionate release, courts also must consider the section 3553(a) factors and dangerousness considerations pursuant to 18 U.S.C. § 3142(g). These considerations do not require extended discussion, as the motion must fail for the reasons described in Section III.B, *supra.*

As for the section 3553(a) factors, courts are directed to impose a sentence that is sufficient, but not greater than necessary, to further the purposes of sentencing; *i.e.*, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with adequate treatment, training, education, and care. 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(D). Additionally, section 3553(a) directs the Court to consider, *inter alia*, the nature and circumstances of the offense and the defendant's history and characteristics. *Id.* § 3553(a)(1).

On November 18, 2019, the Honorable Esther Salas sentenced Mr. Dumitru to a term of imprisonment of twelve months and one day to be followed by a two-year term of supervised release. (Sentencing Tr. at 25:25–26:6). Prior to doing so, Judge Salas determined that Mr. Dumitru's guidelines sentencing range was 15 to 21 months of imprisonment and two to five years of supervised release. (*Id.* at 5:19–24). The Government filed a departure motion pursuant to the United States Sentencing Guideline 5K1.1. (*Id.* at 6:9–17). The

Court granted the departure motion, but reserved a decision on the extent of departure until after argument on the section 3553(a) factors. (*Id.* at 7:1–11).

Ultimately, in fashioning Mr. Dumitru's sentence, Judge Salas considered, *inter alia*, the seriousness of the offense, the need for specific and general deterrence, the need to protect the public and promote respect for the laws, and the need to avoid sentencing disparities. Judge Salas found the offense to be an "egregious" one and primarily was concerned about providing "just punishment" and general deterrence for this type of crime. (*Id.* at 20:2–5 & 21:12–18). Based on the Defendant's lack of criminal history and compliance on pretrial release, Judge Salas was not as concerned with promoting respect for the law, specific deterrence, or protecting the public. Finally, Judge Salas was concerned with the need to avoid unwarranted sentencing disparities because Mr. Dumitru was part of a large-scale conspiracy, and she was compelled to consider Mr. Dumitru's relative role in the conspiracy and how his co-conspirators were sentenced. (*Id.* at 25:2–21).

Defendant has not presented any arguments to mitigate or change Judge Salas's prior analysis of the section 3553(a) factors. I am thus guided by the findings made by Judge Salas at sentencing, which still hold true today and justify Mr. Dumitru serving out his sentence as imposed. As I say, however, my decision is not based primarily on the § 3553(a) factors, but rather on the failure to demonstrate that Mr. Dumitru's circumstances are extraordinary and compelling.

The dangerousness considerations pursuant to § 3142(g) overlap with many of the factors discussed by Judge Salas at sentencing. In connection with pretrial detention, the dangerousness inquiry involves (i) the nature and circumstances of the offense; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Factor (ii) is mooted by the defendant's conviction; factors (i) and (iii) largely duplicate the § 3553(a) considerations discussed above. Although factor (iv), the nature of the danger, is favorable to Defendant (based on the considerations discussed above—namely, his lack of criminal history and compliance on pre-trial release), Mr. Dumitru's motion must be denied for the other reasons discussed herein.

Having weighed all of the relevant factors, I will deny Mr. Dumitru's motion for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A).

### D.   Home Confinement

Finally, Mr. Dumitru's motion includes an alternative request for release to home confinement pursuant to 18 U.S.C. § 3624(c)(2). (Mot. at 4). However, the Court has no authority to grant such relief. "[O]nly the Bureau of Prisons has the actual authority to designate the place of incarceration." *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993); *see also Aigebkaen v. Warden*, No. 20-5732, 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020) ("Pre-release

placement decisions, such as transfers to home confinement, are committed to the BOP's sole discretion."). Accordingly, this alternative request is also denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED. An appropriate Order accompanies this Opinion.

Dated: January 26, 2021

/s/ Kevin McNulty

_____
Kevin McNulty, U.S.D.J.